## KIMBALL and others v. THE TUDOR COMPANY.

*(Circuit Court, D. Maine.  ———, 1880.)*

CONTRACT—DEMURRAGE—CONSTRUCTION.

*Assumpsit* by the owners of the ship Eclipse against the Tudor Company, upon the following account annexed to the writ: "For 7 days' demurrage, at $127.37 per day, $892.99." This was amended at the trial to nine days' demurrage, at the same rate, $1.148.13.

On the sixth of July, 1878, the plaintiffs, through Mr. Burt, a broker of Boston, chartered the ship, which was then building at Bath, to the defendants, to carry a cargo of ice from Wiscasset, Maine, to Madras and Calcutta. The contract was made orally by Mr. Burt with Mr. Field, duly acting

for the defendants, who refused to put it in writing, as being contrary to the usage of the company, but made a memorandum in a book used for that purpose, which was read by Mr. Burt. It was understood that the ship would be ready in about a month, and that a little longer time would make no difference to the defendants. Mr. Burt testified that the defendants agreed to load the ship "when ready;" Mr. Field did not remember using those words or any equivalent expression. The memorandum made no mention of the time. Mr. Kimball, the agent of the ship, testified to a conversation a few days after the sixth of July, in which similar language was used, that the defendants would load the vessel when she was ready, but that they were in no hurry. This was contradicted or not remembered by the other parties to it.

The defendants afterwards chartered of the Messrs. Sewall another ship, the Cheesborough, then building at Bath, for a similar voyage to Bombay. This second vessel was launched July 20th, a few days before the Eclipse, and appeared likely to be ready first; and Mr. Kimball testified that he called upon Mr. Minot, and, in the presence of Mr. Field, those two being the business managers of the defendants, offered to agree that the Cheesborough should be loaded before his vessel, provided the defendants would load her immediately, which offer was declined, Mr. Minot saying that he intended to load the Eclipse first. Mr. Minot and Mr. Field did not recollect this conversation. There was afterwards another conversation between the same parties, in which Mr. Minot said, either that the ship first ready should be first loaded, or that circumstances must decide the question when the time came.

Wiscasset is four or five hours distant from Bath by water, and about a half an hour by land. August 7th, the Cheesborough was taken round to Wiscasset; but a third ship, the Norwegian, was already there, and was loaded first, though delayed a short time by an accident. On the same day, August 7th, Mr. Kimball wrote to the defendants that the Cheesborough had gone to Wiscasset, and said that the Eclipse would

be ready August 13th, and asked if she was to load next after the vessel which should be loading when she was ready.

August 9th, Mr. Kimball wrote that he had been to Wiscasset, and heard from Mr. Sullivan, the defendants' agent there, that the Norwegian was to be loaded immediately, and asked whether the Eclipse was to follow the Norwegian, adding: "We are ready now to go to Wiscasset any day." He received no answer to either of his letters.

Mr. Kimball went to Wiscasset on the thirteenth of August, and found the Norwegian loading, and the Cheesborough lying in port, waiting her turn. He went to Boston again on the 15th, and asked the agents of the defendants whether his ship was to follow the Norwegian, and received no definite answer. August 16th, he wrote that the ship would go to Wiscasset on the next day to load, "as per agreement," and demanded that it should have the berth next after the Norwegian. August 16th, the Eclipse received her register, and on Saturday, the 17th, was towed to Wiscasset, and arrived there between 3 and 4 o'clock in the afternoon. The Norwegian was then loaded and about to haul out of the berth, and the Cheesborough had made fast a line to the wharf, in preparation for hauling in.

The Cheesborough was loaded before the Eclipse. Work on the latter was begun on Monday, August 26th, and finished Wednesday, September 4th, in which time 2,236 tons of ice were put on board. The crew were engaged in Boston, and did not arrive at Wiscasset until Saturday, the 7th, on which day the vessel sailed. The captain, first mate and cook were on board during the loading. Several letters were written by the plaintiffs, claiming demurrage, and by the defendants, denying the claim.

The defendants testified that they had more than 100 men sent from Boston to load their ships at Wiscasset, and that the Eclipse was loaded with great dispatch; that there was but one berth at which a vessel could load.

*E. H. Kimball*, for plaintiffs.

*H. W. Paine* and *R. D. Smith*, for defendants.

LOWELL, J. This case was submitted to me without a jury,

and I have stated above the substance of the testimony. Concerning the contract itself there can be no great doubt that it was, in substance, that the plaintiffs chartered their ship from the time she should be finished, and that the defendants took her from that time. The plaintiffs understood this to mean that they had the right to have their ship loaded next after any vessel which should be in the berth, when they notified the defendants that the Eclipse was ready to proceed from Bath to Wiscasset to be loaded; while the defendants understood it to mean that they should load the ship within a reasonable time after she was at Wiscasset, ready to be loaded, and that it was not unreasonable to require the Eclipse to take her turn next after a vessel which, having already waited ten days, had begun to haul in, or to prepare to haul in, when the Eclipse arrived at Wiscasset, especially if great dispatch was made in getting the ice on board both vessels. I think the defendants take the true view of the legal result of the contract.

Considering the uncertainty of the plaintiffs' undertaking, in point of time, namely, to have their vessel ready for the voyage in about a month or a little more, it is unlikely that the defendants intended to be bound to accept her instantly on the expiration of a time over which they had no control, without regard to their engagements with other vessels, or the necessary preparations for loading a ship with ice at Wiscasset. It was a contract by the plaintiffs to have their vessel ready within a reasonable time after one month; and by the defendants to load within a reasonable time after the vessel was ready.

Under these circumstances it was not unreasonable for the defendants to charter the Cheesborough, which neither party, I suppose, thought would be ready so soon as the Eclipse; but she was pushed forward very rapidly, and it was after she had gone to Wiscasset, ready to load, that the plaintiffs for the first time gave notice that their ship would be ready in six days more. It was not unreasonable to load the Cheesborough first, in this state of things.

This disposes of the claim for demurrage, considered as an extension of the freight. A question which has given me

some difficulty is, whether, in the peculiar circumstances of this indefinite contract, the plaintiffs had a right to require the defendants to answer their repeated inquiries as to the order of time in which they would load the ship. If it is a question of courtesy, the law cannot deal with it. If one of right, the increased expense, slight though it is, of keeping the ship at Wicasset rather than at Bath, consisting of the wages of master, mate and cook, may fairly be charged to the defendants. Upon reflection, I think the plaintiffs were bound to notify the defendants of their readiness to send the ship to Wicasset, and were entitled to be told, in answer to their demand, when the defendants expected to be ready on their part. If the answer had been that the Cheesborough would be loaded first, it is very probable that the plaintiffs would have acquiesced, and have taken their measures to reach Wicasset some days later than the seventeenth of August. It seems to me, therefore, reasonable and just that the expenses which I have referred to should be paid by the defendants.

Judgment for the plaintiffs for $40 and costs.